## Annexation of Lands in Penn Township

*Pierce Allen Coryell*, for petitioner.
*Horace W. Vought*, for respondents.

SHOWALTER, P. J., July 23, 1962.—A petition for the annexation of a portion of Penn Township to the Borough of Selinsgrove was presented to the Selinsgrove Borough Council and on November 7, 1960, the council adopted an ordinance providing for such annexation. Thereafter, under the provisions of the Act of July 20, 1953, P.L. 550, 53 PS §67501, the petition and ordinance having been certified to this court, certain aggrieved persons requested the appointment of a board of commissioners, which board was appointed by the court to inquire into the matter of such annexation and to make findings of fact. The board, on June 10, 1961, filed its report and thereafter a hearing was held before the court on February 15, 1962, at which time evidence was presented on behalf of and also contra to such annexation.

The matter is now before the court as to the legality of the proceedings, and should the court determine the proceedings to be in accordance with the law, then the question of the propriety of the proceedings is to be determined by the court: In Re Borough of Carnegie, 189 Pa. Superior Ct. 569, 151 A. 2d 836 (1959).

The territory sought to be annexed to the Borough of Selinsgrove consists of approximately 438 acres of land in Penn Township adjacent to the northwest section of the borough and comprises several building developments, some land still in the status of farm land, a portion of land owned by Susquehanna University, three church properties, property of the Selinsgrove School District, and several tracts owned by business corporations which are now, or are intended to be, developed for business or industrial purposes. The petition as presented contains the signature of 88 individuals and the purported signature of nine corporations.

The annexation has been contested by the supervisors of Penn Township and also by certain individuals residing and owning property in the area sought to be an-

nexed. Five individuals who had previously signed the petition for annexation appeared at the hearing before the court and requested their names be withdrawn from the petition, alleging misrepresentation in connection with certain matters presented to them prior to the time they signed such petition.

The first question which must be resolved by the court is whether the petition is in proper form and contains the necessary signature of freeholders as is required by the Act of 1953, supra. Section 1 of the act requires the signature of a majority of the freeholders in the territory proposed to be annexed and the total number of freeholders are to be determined as of the date when the petition is presented to the borough. The section further provides that where there are owners of undivided interests in any property, a majority in interest of such owners shall be treated as one person for the purpose of ascertaining the required number of petitioners. This latter requirement presents an interesting question as to whether the owners of property held by husband and wife as tenants by the entireties shall be computed as one person or as two persons.

By stipulation of the attorney for the petitioners and the attorney for the contestants, it is agreed there are 68 properties in the territory proposed to be annexed titled in the name of husband and wife as tenants by the entireties of which properties 35 husbands and wives signed the petition, 31 did not sign and 2 properties where the husband signed but the wife did not, 2 properties owned by persons as joint tenants and signed by all joint tenants, 19 properties owned by individuals in their individual name, of which 10 signed and 9 did not, and 13 properties owned by corporations of which 9 purportedly signed and 4 did not, making a total of 102 properties in the area sought to be annexed. Should tenants by the entireties be counted as one freeholder, the required number of peti-

tioners would number 52, or, if tenants by the entireties are to be counted as two persons, the number of freeholders would total 170 which would then require the signature of 86 freeholders.[1]

The petition was purported to be signed by 9 of the 13 corporations but the signature of such corporations is questioned in that in all instances the same was signed on behalf of a corporation by only one individual and no corporate seal was attached thereto. One question is, therefore, whether the signatures of any corporation should be regarded as being a proper signature on behalf of such corporation.

Section 305 of the Business Corporation Law, the Act of May 5, 1933, P.L. 364, 15 PS §2852-305, provides in part as follows:

"Any form of execution provided in the by-laws to the contrary notwithstanding, any note, mortgage, evidence of indebtedness, contract, or other instrument of writing, or any assignment or endorsement thereof, executed or entered into between any corporation and any other person, copartnership, association or corporation, when signed by the president or vice president *and* secretary or assistant secretary or treasurer or assistant treasurer of such corporation, shall be held to have been properly executed for and in behalf of the corporation." (Italics supplied.)

It would appear from the above requirement that at least two signatures to any instrument of writing are necessary in order to bind a corporation. The conjunction "and" would require at least two signatures, either the president or vice-president *and* the secretary or assistant secretary or treasurer or assistant treasurer. If the word *and* had been *or* a different in-

---

[1] There is a difference of opinion as to the ownership of property by Luke E. Bogar, Jr., and wife who both signed the petition and this computation includes such property. This makes no difference so far as the final result is concerned as will appear hereafter.

terpretation might result and any one of the named officer's signature could be sufficient. Where only one of such signatures appears in the corporate execution, then the requirement of the Business Corporation Law is not met. If two signatures are necessary to bind a corporation in connection with its contracts or other business dealings, should it not also be necessary for a corporation to execute other instruments of writing in the same manner? There are numerous cases in Pennsylvania construing the matter of signatures by and on behalf of corporations, but those cases are of little help in this instance for the reason that those cases were concerned with situations where the common seal of the corporation had been affixed to the instrument and, as stated before, no corporate seal was attached to any of these signatures. Should the corporate seal have been so affixed, or had the word "Seal" appeared on the petition, which could have been adopted for the occasion, it would have then been proper to argue that the seal is itself prima facia evidence of the proper execution of the petition for annexation: 9 P.L. Encyc., Corporations §280; Braddock Township Appeal, 148 Pa. Superior Ct. 52 (1942) ; Collins v. Tracy Grill & Bar Corporation, 144 Pa. Superior Ct. 440, 446 (1941).

An examination of the individual signatures on behalf of the nine corporations discloses the following facts:

The purported execution on behalf of Susquehanna University is as follows:

| Name of Freeholder | Address | Date |
|---|---|---|
| Gustave A. Weber | Susquehanna University | 4/5/60 |

Although it is a well known fact that Gustave A. Weber is President of Susquehanna University, the signature in no manner shows that he is signing in any representative capacity as president or other representative officer of such university, and the only thing identifying the university is the address, which cer-

tainly cannot be deemed to be part of the corporate signature. Gustave A. Weber is not a freeholder in the area proposed for annexation so that his signature has no legal significance. We, therefore, have no alternative but to determine that this purported signature on behalf of Susquehanna University is not proper and should not be counted as a signature to such petition.

The purported signature on behalf of the Methodist Church is as follows:

| Name of Freeholder | Address | Date |
|---|---|---|
| The First Methodist Church | | |
| Nelson A. Thomas | Selinsgrove, Pa. | 6/9/60 |

An examination of the record title of the Methodist Church shows the title to be registered in the name of "Methodist Episcopal Church of Selinsgrove." Again, the signature of Nelson A. Thomas does not indicate in what capacity he is signing and the corporate name as signed on the petition is incorrect in that the proper corporate name is as above set forth. Nelson A. Thomas is not a freeholder in the area proposed for annexation so that his signature has no legal significance. For these reasons the purported signature on behalf of the Methodist Church is not proper and should not be counted as a signature to such petition.

The purported signature on behalf of the Catholic Church is as follows:

| Name of Freeholder | Address | Date |
|---|---|---|
| | St. Pius X Church | |
| | Penn Township, | |
| Rev. Anthony J. McGinley | Pa. | 6/13/60 |

The record title of this property shows the title to be registered in the name of "The Most Reverend George L. Leech, DD. J.C.D., Bishop of the Diocese of Harrisburg, in trust for the Roman Catholic Congregation of Saint Pius X in the Borough of Selinsgrove". The name or signature of Reverend George L. Leech as trustee nowhere appears in the signature above so that in no

manner could it be said that the signature by Reverend McGinley is for or on behalf of said freeholder. The title being in a trustee would require the signature of such trustee, which is not present in the above. Likewise, the signature of Reverend McGinley is not made in any representative capacity. This signature on behalf of such corporation is not proper and should not be counted as a signature to such petition. Reverend Anthony J. McGinley is not a freeholder in the area proposed for annexation so that his signature has no legal signifcance.

The remaining six corporations purportedly signed as follows:

| Name of Freeholder | Address | Date |
|---|---|---|
| Lukas Realty Co. | North Water St. | |
| Luke E. Bogar, Jr. Pres. | Selinsgrove, Pa | 5/19/60 |
| Selinsgrove Municipal Authority | | |
| H. P. Murray, Chairman | Selinsgrove, Pa. | 5/19/60 |
| J. G. Ott Packagings, Inc. | | |
| A. T. Soper, Pres. | Selinsgrove, Pa. | 6/3/60 |
| SAID Corp. | | |
| D. K. Rishell, Pres. | Selinsgrove, Pa. | 6/6/60 |
| Central Penn Enterprises, Inc. | 39 N. 4th St. | |
| By Bryon Hartman V. Pres | Sunbury, Pa. | 8/8/60 |
| Weis Markets, Inc. | 518-618 S. 2nd St. | |
| By Sigfried Weis V-P | Sunbury, Pa. | 9/15/60 |

As stated above, the signatures on behalf of each of these six corporations are not in conformity with the provisions of the Business Corporation Law in that only the signature of one officer of such corporation appears, and for this reason none of the above signatures on behalf of such corporations are proper and should not be counted in the computation of signers to the petition. None of the signatures of the officers of any of the corporations indicates that such officer holds more than one office in such corporation or is signing in more than one representative capacity for such corporation.

It cannot be argued, therefore, that any officer is signing in more than one capacity as might be under the decision in the case of Collins v. Tracy Grill & Bar Corporation, supra. Further, there being no seal attached to any of the signatures, the presumption of proper execution does not arise.

By eliminating the nine corporations from the number of freeholders signing the petition, if tenants by the entireties are counted as one person this leaves a net number of 47 freeholders who have signed, which is five short of the required number of 52; if tenants by the entireties are counted as two persons, this leaves a net number of 84 who have signed, which number is two short of the required number of 86.[2] For this reason alone the annexation must fail.

A numerical computation may be set forth as follows:

|  | Signers | Non-Signers |
|---|---|---|
| Tenants by the entireties | | |
| (Counting as one freeholder) | 35 | 33 |
| Joint tenants | 2 | |
| Individuals | 10 | 9 |
| Corporations | 9 | 4 |
|  | 56 | 46 |
|  | Total | 102 |
| Less: | | |
| Corporations not signing properly | 9 | |
| Total freeholders signing | 47 | |

Majority of 102 freeholders—52 freeholders necessary to sign petition.

---

[2] This computation includes the property of Luke E. Bogar, Jr., and wife and which computation is more favorable to the petitioners. If such property is not counted the number of signatures would be three short of the required number.

|  | Signers | Non-Signers |
|---|---|---|
| Tenants by the entireties (Counting as two free-holders) | 70 | 62 |
| Husbands signing | 2 | |
| Wives not signing | | 2 |
| Joint tenants | 2 | |
| Individuals | 10 | 9 |
| Corporations | 9 | 4 |
| | — | — |
| | 93 | 77 |
| | Total | 170 |

Less:
Corporations not signing properly     9

     — 

     84

Majority of 170 freeholders—86 freeholders necessary to sign petition.

It is not necessary for the court to decide the question as to whether the owners of property as tenants by the entireties are to be counted as one person or two persons, for in either event, the required number of signatures to the petition is not present as is shown by the above computation.

The court, however, is of the opinion that the legislature in including the provision that owners of undivided interests shall be treated as one person intended that whether ownership of property be as tenants in common, as joint tenants with the right of survivorship, or as tenants by the entirety, they should all be treated the same and counted as one person in each instance.

The court is mindful of the fact that previous decisions have held that tenants by the entireties are to be counted as two persons but these cases were decided

before the Act of 1953 became effective. See Appeal of Township of Somerset, 42 D. & C. 470 (1941).

It is true that the court in the case of Ligonier Township Annexation, 5 D. & C. 2d 124 (1955), followed the Somerset case, but the court in that case failed to take into consideration the provision in the Act of 1953 as to the counting of owners of undivided interests, although the court did cite the act in connection with the determination of the required number of petitioners to be made as of the date the petition was presented to the borough. Such case is, therefore, not determinative of the question since the court did not consider such provision of the act.

The court in the case of City of Johnstown Annexation (No. 2), 19 D. & C. 2d 715 (1957), without any discussion of the question, followed the Act of 1953 by counting tenants by the entireties as one person only.

The above interpretation of such provision of the Act of 1953 is in conformity with the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551. Section 51 of the act provides as follows:

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law."

Section 52 of the act (46 PS §552) provides further:

"In ascertaining the intention of the Legislature in the enactment of a law, the court may be guided by the following presumptions among others:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable; . . ."

There would seem to be no reason why ownership as tenants in common and as joint tenants should be counted as one and that tenants by the entireties be counted as two freeholders. Such a result would be absurd and would certainly not be the interpretation intended by the legislature.

At the hearing before the court, five persons testified and asked to have their names withdrawn from the petition as originally filed for the reason that they alleged there were misrepresentations made to them in obtaining their signatures.

The Superior Court in the case of Lerten Appeal, 168 Pa. Superior Ct. 516 (1951), has laid down certain rules in connection with the withdrawal of names from a petition, in which the court states that the lower court is empowered to exercise a sound and judicial discretion to determine whether the evidence presented for withdrawal is sufficient in quality and probative value to justify withdrawal, stating that misrepresentation, if made, may be a sufficient reason for the withdrawal of a name from a petition.

From the testimony presented before the court in this matter there was evidence of various meetings attended by residents and freeholders of the area proposed to be annexed, there were various statements and representations made at these meetings pertaining to the advantages and disadvantages of annexation and the matter was made very attractive to them for annexation. The court feels that those persons asking to have their names withdrawn from the petition may have acted hastily in signing and may also have had ample opportunity to investigate the statements made to determine their accuracy, but at the same time, since the question was controversial and since the permis-

sion to withdraw their names would have no legal effect so far as this proceeding is concerned, it having already been determined that the corporate signatures were not proper, such permission should be granted in the interest of justice.

The court is of the opinion that since this matter of annexation has become so controversial a full discussion and disclosure of all of the facts should be entered into by all parties both for and against the annexation should a new petition for annexation be circulated for signatures. It may be that there will not be the opposition to a new petition, as in this case, should petitioners decide to include less acreage in the proposed annexation, and should the area proposed to be annexed also include the present township road along the southern boundary of the proposed annexation.

In any event, the court being of the opinion that the required number of signatures have not been obtained to the present petition as required by law, it must be dismissed, and this makes it unnecessary for the court to discuss or to decide the matter of the propriety of the annexation.

*Order*

And now, July 23, 1962, after hearing and argument, for the reason that the petition for annexation does not contain the signatures of the required majority of freeholders of the area proposed to be annexed, the proceedings for annexation are dismissed at the cost of petitioners.